UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

ALLEN HODGKINSON )
)
v. ) NO. 2:07-CV-56
)
HOWARD CARLTON; )
STATE OF TENNESSEE )

## MEMORANDUM OPINION

Allen Hodgkinson, a state inmate serving sentences of life and a consecutive twenty years, brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he is being confined in violation of the Constitution. Respondents have filed a motion for summary judgment, a supporting brief, and copies of parts of the state court record and opinion. [Docs. 9, 10, and 11, Attachments 1-6].

Petitioner has filed a response, arguing that a motion for summary judgment is not authorized by the Rules Governing Section 2254 Cases and that the only proper response to a habeas corpus application is to file an answer, accompanied by all relevant records. [Doc. 12]. Though petitioner's position is certainly understandable, it misses the mark. It is true, as petitioner points out, that Habeas Corpus Rule 5 requires the respondent to answer the allegations in the petition, state whether the claims have been exhausted, and identify what transcripts are available. However, Rule 4 provides that the court shall order the respondent to file an answer, *or take such other action as the judge deems appropriate*." This italicized provision,

as explained in the Advisory Committee Notes to Rule 4, "is designed to afford the judge flexibility in a case where either dismissal or an order to answer may be inappropriate." Habeas Corpus Rule 11 permits a federal court to apply the Federal Rules of Civil Procedure to a § 2254 petition when appropriate, *see McFarland v. Scott*, 512 U.S. 849, 866 n.2 (1994), and Rule 56 of the Federal Rules of Civil Procedure permits the filing of a motion for summary judgment.

According to the Supreme Court, the Habeas Corpus Rules confer upon a district court "ample discretionary authority to tailor the proceedings" in a habeas case. *Lonchar v. Thomas*, 517 U.S. 314, 325 (1996). Here, the Court used its discretionary authority to order respondents to file an answer "or other pleading" and allowed that response to be a dispositive motion. [Doc. 6]. Respondents chose to file a motion for summary judgment, along with the relevant portions of the state court record, a copy of which was sent to petitioner. This response is procedurally sanctioned.

As to the motion, the Court is persuaded that summary judgment is warranted in this case, as indicated below, and will **GRANT** respondents' motion.

## I. **Procedural History**

Following a ten-day trial in 1987, petitioner was convicted, along with two co-defendants, of felony first-degree murder and conspiracy to sell over 30 grams of cocaine. *State v. Hodgkinson,* 778 S.W.2d 54, 58 (Tenn. Crim. App.), *perm to app. denied* (Tenn. 1989). Petitioner sought direct review in the Tennessee Court of Criminal Appeals, but his convictions were affirmed. *Id*. He next challenged his

conviction by filing a petition for post-conviction relief on August 30, 1991, which remained pending in the trial court for more than eight years before appointment of counsel on October 5, 1999. *Hodgkinson v. State* 2006 WL 962950, *2 and n.1 (Tenn. Crim. App. 2006). The petition was amended, an evidentiary hearing was held, the case was dismissed, and the trial court's judgment was affirmed on post-conviction appeal. *Id.*, at *7. This instant habeas corpus petition followed.

## II. **Factual Background**

The following summary of the facts was taken from the state appellate court's opinion during petitioner's direct appeal.

Early in 1986, a man named James Hart delivered a kilo of cocaine to the victim, Bobby Hensley of Asheville, North Carolina. Hart, according to his trial testimony, had bought the cocaine in Florida upon Hensley's request and he [Hart] understood that arrangements had been made to resell the drug to a Johnson City, Tennessee, resident named "Buddy." On March 22, 1986, Hensley traveled to Johnson City with the drugs, checked into a motel, and called the home of Franklin "Buddy" Humphreys. Answering the call was Buddy's friend Richard Jones, whom Buddy had recruited to "ride" on a drug deal with the victim, for which he would receive $1,000.

Jones and Humphreys met Hensley at the motel and, after a brief conversation with Hensley, Humphrey left, saying that he was going to Myrtle Beach, South Carolina. Hensley then made a quick call and, when it ended, he asked Jones to take him to "Allen's." They departed, and upon arriving at petitioner's mobile

3

home, Hensley told Jones to go in and ask petitioner for the money. Jones acted as instructed, but when he asked for the money, petitioner replied that he had no money. Jones insisted that petitioner personally convey that to Hensley, so they left the trailer and Jones climbed into the passenger's seat. Petitioner discussed the issue of the money with Hensley through the driver's side, and then turned to go back into his mobile home.

According to Jones, Hensley had become quite agitated, both had firearms, shots were fired from the car, and Jones, claiming self-defense, fired a fatal shot into Hensley's head. For hours after the shooting, petitioner and Jones tried to locate Humphreys. When they finally learned that Humphreys had gone to the beach, they covered the victim with a blanket and decided to find a friend, George Humphreys. While petitioner followed in his vehicle, Jones drove Hensley's car, inside of which was the owner's body and his cocaine, to Tommy Humphreys' home, where they found George Humphreys.

They explained to George Humphreys what had happened and he, along with petitioner and Jones—consuming beer the entire time— began to plan their next move. Eventually, they bound the victim's body to cinder blocks, dumped it in a nearby lake, removed the cocaine, retained a small sample for their personal use, hid the remainder, and abandoned the vehicle in a remote area, where it was later discovered burned. For several hours thereafter, Jones, George Humphreys, and petitioner drove around in the latter's car.

In the wee morning hours of the next day, Jones was dropped off at a

friend's house, while his companions began driving to petitioner's mobile home. Petitioner became upset en route, jumped from the vehicle, ran to a nearby residence, pounded on the door, and began screaming hysterically "They are going to shoot me." The Sheriff's Department was called and, when the officers arrived, petitioner was arrested. In the midst of the arrest, George Humphreys drove past the scene and was followed by the officers, who then stopped him and arrested him for driving under the influence. As a result of the ensuing investigation, Jones and Buddy Humphreys were arrested a few days later.

### III. **Respondents' Motion**

In their motion for summary judgment, respondents assert that petitioner's claim of ineffective assistance of counsel was adjudicated in state courts and that, under the deferential review standards for state court decisions in 28 U.S.C. § 2254, he is entitled to no relief. Petitioner has responded but, as the preceding discussion indicates, offers a procedural objection and not any argument to counter that offered in the motion.

### IV. **Discussion**

Petitioner's sole claim for relief is that he had ineffective assistance of counsel because his attorney failed to introduce certain critical evidence in the form of telephone records. Petitioner argues that the only evidence introduced at trial which connected him to the robbery and murder was a series of telephone calls between him and co-defendant Buddy Humphreys. According to petitioner, these records would have supported his claim that he had an ongoing business relationship

5

with one of his co-defendants which explained the calls on the days leading up to and including the day of the murder. It is petitioner's opinion that, if the full depth, breadth, range and extent of those calls had been brought to the attention of the court and the jury, a different verdict would have resulted.

The prosecution's theory of the case was that petitioner and his co-defendants, along with Hart and the victim, had conspired to distribute cocaine and that petitioner and his co-defendants had also conspired to ambush the victim and take the cocaine he had purchased in Florida. *Humphreys*, 778 S.W.2d at 59. Among the evidence offered to prove the conspiracies were telephone records showing calls between petitioner and a co-defendant.[1]

When this claim of ineffective assistance was carried to the Tennessee Court of Criminal Appeals, that court first detailed counsel's testimony offered at the post-conviction hearing as to the telephone records. The attorney stated that he discussed issues regarding telephone records with petitioner, advising him that the telephone call petitioner had placed to a co-defendant on the day of the murder would be critical. Counsel also stated that he had learned that petitioner called the co-defendants often because he worked with them and that, indeed, at trial the co-

---

[1] According to the Court of Criminal Appeals, the purpose of the state's use of the theory of a conspiracy to murder was to hold Buddy Humphreys responsible for Hensley's murder as a co-conspirator. The state court found that the evidence to support the second conspiracy was unconvincing and further found that the second conspiracy theory was undermined by the indictment which alleged common law murder. It, therefore, vacated Buddy Humphreys' felony murder conviction, but concluded that the proof of felony murder against petitioner was overwhelming without the conspiracy theory. This evidence included the chain of events leading up to Hensley's meeting with Jones and petitioner, the fact that no money was found with which to pay Hensley for the drugs [described by the state court as "a curious break in the otherwise carefully planned drug deal"], and that petitioner participated in disposing of the victim's body and his car and in taking the cocaine and hiding it. Thus, seemingly, any issue concerning the telephone calls, insofar as they were offered at trial to support the state's theory of a *murder conspiracy*, was rendered moot on direct appeal. However, the *cocaine conspiracy* is a different matter because that conviction was upheld.

6

defendants testified to a long pattern of calls among all defendants.

While acknowledging that the co-defendants' credibility was at issue and that their testimony was the only evidence presented to establish the working relationship between them, counsel related that it was "fairly common knowledge that they worked together as—as setting up the rock shows, and they called each other about transportation and ... shelter and hotel rooms when they'd go out on a job...." Counsel also acknowledged that he did not attempt to introduce the telephone records into evidence which would have shown a long history of calls between petitioner and the co-defendants, even though the state was focusing on one call. However, the attorney said that he "was satisfied that the jury knew that they had a working relationship and they made phone calls."

Petitioner testified at that same hearing. He recounted that the prosecutor, near the end of trial, told them that he had phone calls "which sets up the conspiracy" and that he [the prosecutor]

> " passed them all out where it showed Buddy Humphreys calling the guy they bought the drugs from, Buddy calling Mr. Jones, Mr. Jones calling the other guy that had the drugs. And then he pulls mine out and says, He's made six (6) phone calls in the last five (5) days to Buddy Humphreys. Well, when you get that out, Buddy Humphreys is never home. There isn't never me calling him. That's what set up the whole thing was saying we all called each other around this time of the drug deal. Well, I tried to get [my attorney] to get my phone records, to go back three (3) or four (4) years, which those happen to go back three (3) months. And you can see I called the guy an average of seventeen (17) to fifteen (15) times every month, not just what he tried to pick and choose here and break down and throw in the jury's face the last day or two of the trial.

*Hodgkinson*, 2006 WL 962950, at \*4.

Petitioner specifically complained that because of counsel's failure to present the telephone records, the jury was left with the impression that his contact with Buddy Humphreys was evidence of his involvement in the conspiracy to kill the victim and take his cocaine, whereas presentation of the evidence would have allowed it to consider the fact that petitioner had called Buddy Humphreys for years.

After reviewing this testimony, the Court of Criminal Appeals pointed to the record, finding that it showed that many witnesses had testified to petitioner's involvement in disposing of the victim's body and to his friendship and business relationship with his co-defendants—a relationship of which the jury was fully aware. Finding that petitioner had failed to show prejudice, the state appellate court concluded that he was not entitled to post-conviction relief.

The standard which governs review of this claim is found in 28 U.S.C. 2254(d). Under this standard, a district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

As established by the Supreme Court, the federal law which governs claims of ineffective assistance is found in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render

8

the trial unfair and the result unreliable. *Id.* at 687. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 694. To demonstrate deficient performance, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.*, at 688, 693-94. To show prejudice, a petitioner must demonstrate that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different *Id.* at 694. A finding of no prejudice provides an adequate ground for rejecting an ineffective assistance of counsel claim, even if a deficient performance is assumed. *Id.* at 687.

In considering petitioner's claims, the Tennessee Court of Criminal Appeals cited several cases, including *Strickland v. Washington*, 466 U.S. 668 (1984)—the seminal case for determining whether counsel has rendered constitutionally ineffective assistance. Since the *Strickland* test was employed to resolve petitioner's claim, the state court's decision was not "contrary to" clearly established federal law as determined by the Supreme Court. The question then becomes whether the state court unreasonably applied *Strickland* in deciding that petitioner had not shown prejudice. It did not.

The factual determinations made by the state appellate court based on its review of the record are entitled to deference and, absent any clear and convincing evidence to the contrary, will be presumed correct. *Brumley v. Winard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Matta*, 449 U.S. 539, 546-47 (1981)). Petitioner

9

Case 2:07-cv-00056 Document 13 Filed 09/03/08 Page 9 of 11 PageID #: 9

has offered no such evidence. Given these findings, as well as the state court's reasoning which supports its conclusions, the state court decision did not result from either an unreasonable factual determination in light of the evidence before it or an unreasonable application of the controlling legal principles in *Strickland*. Therefore, petitioner is not due any relief on this claim.[2]

## V. **Conclusion**

Accordingly, because there is no genuine issue about any material fact and because respondents are entitled to a judgment as a matter of law, their motion for summary judgment will be **GRANTED** [Doc. 9] and this petition will be **DISMISSED**.

## VI. **Certificate of Appealability**

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that petitioner's claim, which

---

[2] In a tangential argument, petitioner maintains that Jones committed robbery and murder in petitioner's front yard without petitioner's having any prior knowledge that this would happen. He further suggests that he was coerced into assisting Jones, as would anyone in the same situation. That situation, as posited by petitioner, was that he had heard and/or seen a murder be committed; that the murderer [Jones], with gun in hand, asked him [petitioner] for his help; that petitioner gave that help involuntarily; and that he fled from Jones the minute he could. These arguments were made in the post-conviction court, but the Court has no idea, and petitioner does not explain, how these arguments relate to his claim that his attorney failed to introduce certain telephone records.

10

was adjudicated in state court would not support habeas corpus relief because, after an examination of the state court decision and the relevant governing law in Supreme Court cases, that decision was not contrary to or an unreasonable application of *Strickland* and was not based on an unreasonable determination of the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of the claim and could not conclude that it is "adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.

**ENTER**:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE